UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Tracy Culpepper, | ) | Civil Action No.: 0:17-cv-02032-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Tracy Culpepper has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). This matter is now before the Court for review of the Report and Recommendation ("R & R") of United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rules 73.02(B)(2)(a) and 83.VII.02 (D.S.C.). [ECF # 14]. The Magistrate Judge recommends that the Court affirm the decision of the Commissioner. This Court has thoroughly reviewed the record in this case and now issues the following Order.

**Statement of Facts and Procedural History**

This Court is tasked with reviewing the denial of Plaintiff's application for disability benefits. Plaintiff applied for disability insurance benefits ("DIB") on September 12, 2013, alleging a disability date of April 6, 2012 due to ulnar nerve damage in both arms. [ECF #9-6, Ex. 2E]. Briefly stated, Plaintiff's medical history in the record dating back to July 2007 reveal that she has been treated for many years for problems associated with her upper extremities. In 2012, Plaintiff began treating at Upstate Bone and Joint, where she was evaluated for complaints of bilateral arm pain and numbness. [ECF #9-11, Ex. 16F]. She was seen by Robert Finley, M.D. in 2012 who ordered a nerve conduction

study after her x-rays returned normal results. An MRI on her cervical spine could not be completed due to discomfort but results should C4-5 had very mild diffuse annular disc bulge with no evidence of neural impingement. [ECF #9-11, Ex. 16F]. A few months later in 2012, Dr. Finley performed a left carpal tunnel release and medical epicondylectomy on the left elbow with ulnar nerve decompression. [ECF #9-11, Ex. 16F]. At her follow up appointment, Dr. Finley recommended she go back to work approximately one month later. [ECF #9-11, Ex. 16F]. In November of 2012, Plaintiff underwent right carpal tunnel release, decompression of the ulnar nerve, and medial epicondylectomy. At a follow up visit from this surgery, Dr. Finley's physician's assistant diagnosed Plaintiff with carpal tunnel syndrome and tardy ulnar nerve palsy. He prescribed Plaintiff Tramadol and placed her on light duty.

On January 17, 2013, Thomas J. Fox, M.D. evaluated Plaintiff for complaints of neck pain and bilateral arm pain. Plaintiff's nerve conduction studies were within normal limits, though her EMG showed evidence of ulnar neuropathy at the elbow bilaterally. A day later, Dr. Finley evaluated Plaintiff for complaints of pain in right elbow, neck pain and numbness in the arm and forearm and dorsum of her hand. Her examination revealed pain with rain of motion of her neck. Dr. Finley ordered an MRI of her cervical spine and a repeat EMG. [ECF #9-7, Ex. 4F]. On February 14, 2013, Dr. Finley's notes indicate that Plaintiff's MRI results were normal but an EMG showed an abnormality with evidence of ulnar neuropathy at the elbow bilaterally. Dr. Finley diagnosed arm pain and numbness of arm and referred Plaintiff to neurology. [ECF #9-7, Ex. 4F]. On March 26, 2013, Plaintiff was evaluated by L. Edwin Rudisill, M.D. whose notes indicate tingling and numbness in the fingers bilaterally with Spurling's test, and handsd showing decreased light touch sensation. The notes further indicate Plaintiff tested positive for Tinel's test but had good range of motion in her joints. Dr. Rudisill diagnosed Plaintiff with persistent numbness and tingling in the ulnar distribution. [ECF #9-8, Ex. 9F]. In June

of 2013, Dr. Rudisill evaluated Plaintiff for complaints of persistent bilateral elbow pain. Nerve conduction studies showed evidence of persistent ulnar neuropathy. [ECF #9-8, Ex. 10F]. Plaintiff was seen by Dwight Jacobus, M.D. in July of 2014 for complaints of ongoing pain in her wrists and elbows. Dr. Jacobus recommended Plaintiff be brought into pain management and further ordered a psychological evaluation to be sure that stability was present for pain management. [ECF #9-10, Ex. 13F]. Dr. Jacobus against evaluated Plaintiff in August and December of 2014. His notes reveals that an MRI from October of 2014 revealed degenerative changes secondary to arthrosis at C4-5. He diagnosed Plaintiff with carpal tunnel syndrome, neck pain, and cervical myelopathy. [ECF #9-10, Ex. 13F]. At the December appointment, Dr. Jacobus diagnosed Plaintiff with shoulder joint pain and knee pain. [ECF #9-11, Ex. 16F]. On April 28, 2015, a nurse practitioner evaluated Plaintiff and diagnosed her with anxiety and depression. [ECF #9-10, Ex. 15F]. In May of 2015, Dr. Jacobus diagnosed Plaintiff with neck pain, intervertebral disc disorder, and cervical radiculitis. [ECF #9-10, Ex. 13F]. An EMG on November 5, 2015 was mildly abrnomal and showed recurrent right tardy ulnar palsy. [ECF #9-12, Ex. 20F].

Plaintiff applied for disability on September 12, 2013. Plaintiff's claim was denied initially and upon reconsideration. After she requested and was granted a hearing, the ALJ denied her claim on May 17, 2016. Plaintiff's request for a review by the Appeals Council was eventually denied, making the findings and determination of the ALJ the final decision of the Commissioner. The ALJ reviewed all of the medical history in the record, as well as Plaintiff's testimony at the hearing. The ALJ subsequently came up with several findings.

The ALJ's findings were as follows:

(1) The claimant meets the insured status requirements of the

Social Security Act through December 31, 2017.

(2) The claimant has not engaged in substantial gainful activity since April 6, 2012 (20 C.F.R. 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: bilateral carpal tunnel syndrome and cervical degenerative disc disease (20 C.F.R. 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can frequently handle, finger, and feel bilaterally. She can do no climbing of ladders and have no exposure to dangerous machinery, unprotected heights, or extreme cold.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

(7) The claimant was born on January 31, 1969 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

(8) The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in

>     the Social Security Act, from April 6, 2012, through the date of
>     this decision (20 C.F.R. 404.1520(g)).

[ECF #9-2, pp. 14-21].

On August 2, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #10; ECF #11; ECF #12], and the Magistrate Judge issued a Report and Recommendation ("R&R") on September 12, 2018, recommending that the Commissioner's decision be affirmed [ECF #14]. Plaintiff filed objections on September 26, 2018. [ECF #15]. Plaintiff objects to the recommendation of the Magistrate Judge based on the following arguments: (1) the ALJ failed to properly consider Plaintiff's headaches and their resulting limitations; and (2) the ALJ did not properly explain which of Plaintiff's subjective complaints were credible. Defendant responded to these objections on October 10, 2018. [ECF #16].

## **Standard of Review**

### I.  **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the

5

Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.    The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court

need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her

7

previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

8

as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (regarding burdens of proof).

## Analysis

### I. Severity of Headaches and Resulting Limitations

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ adequately considered her complaints of headaches, particularly in light of the vocational expert's testimony at the hearing. Within her objections, Plaintiff explains that the vocational expert ("VE") testified that if an individual was unable to maintain attention and focus or stay on task for as much as thirty minutes at a time, or required more than the usual number of breaks during the day, this limitation would be inconsistent with employment. [ECF #15, p. 2]. The VE also stated that the inability to work a five day, eight hour a day work week consistently, or the need to miss three or more days of work per month would be inconsistent with competitive employment. [ECF #15, p. 2]. Plaintiff argues her headaches causes the very types of

9

limitations that the VE testified would preclude all work. Plaintiff generally argues that the ALJ did not adequately explain why she discounted the complaints of headaches and failed to consider several medical records that referenced Plaintiff's history of headaches.

The RFC is a determination by the ALJ, based on all relevant medical and non-medical evidence, of what a claimant can still do despite her impairments. *See* 20 C.F.R. §§ 404.1520; SSR 96-8p, 1996 WL 374184 (July 2, 1996). As stated in the Social Security Regulations, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). Further, an RFC assessment must include a discussion describing how the evidence supports each conclusion. SSR 96-8p, 1996 WL 374184, at *7. First, a review of the decision by the ALJ reveals that she did in fact specifically consider Plaintiff's headaches and the issues or limitations resulting from the occurrence of her headaches. The ALJ indicated that the claimant reported neck pain and headaches and indicated that Plaintiff reported that she sits in a dark room when she has a migraine. Elsewhere in the decision, the ALJ references Plaintiff's complaints of headaches as described to at least one consultative examiner. It is thus clear from the decision that the ALJ was aware of Plaintiff's complaints of headaches and considered medical records that reflected these complaints.

Moreover, Plaintiff's citation to the record revealing a history of headaches does not necessarily support a finding that the ALJ should have determined that it should have had a greater effect on the RFC determination. The ALJ noted that the medical records generally reflect primarily conservative treatment, with few indications of more aggressive treatment. At least one physician, Dr. Rudisill, indicated that Plaintiff did not have any work restrictions. Despite this opinion, the ALJ nonetheless provided a more restrictive RFC than was opined by that physician. Therefore, despite Plaintiff arguing

10

that the ALJ did not specifically point to certain medical records in discussing her headache problems, it is clear that the ALJ reviewed the medical history and was aware of a history of headaches in assessing the RFC, and further, that the ALJ reviewed the medical records and gave additional work limitations within the RFC.

Second, while Plaintiff argues that the VE testified that certain limitations would preclude work, Plaintiff does not link the degree of limitations that the VE hypothesized would preclude work with Plaintiff's headache complaints. Instead, Plaintiff, in conclusory fashion, argues that her headaches "would certainly cause the limitations that the vocational expert indicated would preclude work," without relying on or referencing any part of the record or medical evidence that supports this conclusion. Plaintiff bears the burden of proof to establish that she is unable to perform her past relevant work. It is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This Court may not go back and re-weigh the evidence when it is clear from the decision that the ALJ assessed the complaints, such as headaches, that Plaintiff argues should be considered work preclusive. This Court finds that the ALJ's decision is supported by substantial evidence found in the record; therefore, this objection is overruled.

## II.      Plaintiff's Subjective Complaints

Plaintiff further objects to the R&R on the ground that the ALJ failed to properly consider certain evidence in evaluating Plaintiff's subjective complaints. The Magistrate Judge found that the ALJ properly evaluated Plaintiff's subjective complaints and that a review of the objective medical evidence and Plaintiff's testimony supports such a finding. Plaintiff argues in her objections that the ALJ did not consider her headaches. This Court has previously discussed the ALJ's assessment of this particular impairment in the above section; thus, to the extent Plaintiff argues that the ALJ's discussion of her

11

subjective complaints did not include her headaches, this Court disagrees.

In Social Security Ruling 16-3p, the Social Security Administration explains that the intensity and persistence of a claimant's symptoms should be evaluated to determine whether these symptoms limit the ability to perform work-related activities.[3] In evaluating a claimant's subjective symptoms, an ALJ must follows a two-step process: (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; and (2) evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p; *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (explaining the two-step process in determining whether a person is disabled by pain or other symptoms). In following this process, an adjudicator should not evaluate a claimant's symptoms based solely on objective medical evidence, unless that evidence supports a finding that an individual is disabled. SSR 16-3p, 2016 WL 1119029, at *5 (dated March 16, 2016, with an effective date of March 28, 2016). If an ALJ cannot make a disability determination based solely on medical evidence, an individual's symptoms should be evaluated based on the evidence available in the record, including medical sources, statements from the individual, and any other source with information concerning the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *5. Factors relevant to the evaluation of a claimant's symptoms include daily activities, frequency of pain or other symptoms, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, treatment other than medication used to alleviate pain or other symptoms, other measures used to alleviate pain or other symptoms, and any other factors concerning a claimant's functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL

---

[3]SSR 96-7p was rescinded and superceded by SSR 16-3p, which became effective on March 28, 2016.

1119029, at *7. A claimant's subjective complaints need not be accepted if they are inconsistent with the available evidence, such as objective evidence of the underlying impairment and the extent to which the impairment could be expected to cause the symptoms alleged. *Craig*, 76 F.3d at 596.

Here, the Magistrate Judge found that the ALJ adequately explained why she discredited some of Plaintiff's subjective complaints. In so doing, the Magistrate Judge pointed out that the ALJ explained that the medical evidence did not fully support Plaintiff's complaints, that Plaintiff generally received conservative treatment, and that Plaintiff's objective testing did not support the severity of the subjective complaints as alleged by Plaintiff. This Court has considered Plaintiff's arguments in response to this finding. As an initial matter, Plaintiff argues that the fact that she was sent to pain care management following her surgeries and her strong narcotics prescription indeed support her subjective complaints. The ALJ reviewed Plaintiff's medical history on a longitudinal scale, and rightly did not focus only on only one period of time directly after surgery, when one would expect a claimant to experience pain. The ALJ also did not indicate that Plaintiff did not need pain medication; instead the ALJ indicated that the severity of her pain seemed incongruent with her overall treatment.

Relying upon *Hill v. Berryhill*, No. 0:15-cv-05091, 2017 WL 2703971 (D.S.C. 2017), Plaintiff further argues that some of the reliance on objective testing was misplaced in that the ALJ did not indicate how her subject complaints were inconsistent with said testing. Plaintiff also argues that the ALJ "cherry-picked" the evidence in assessing Plaintiff's subjective complaints of pain, particularly with headaches. *Hill* considered a plaintiff's argument that the ALJ erred in assessing the RFC because the ALJ improperly discredited the subjective symptoms and relied on a one-sided view of the medical evidence to find that the plaintiff was not disabled. The plaintiff's contentions were that the ALJ failed to explain the weight given to the evidence that appeared in conflict with the RFC finding and that the

13

ALJ did not connect the facts used to discredit Plaintiff's subjective complaints to the RFC finding. *Id.* at *4. *Hill* considered the arguments in light of a recent Fourth Circuit opinion, *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017). In *Lewis*, the Fourth Circuit emphasized that an ALJ must consider all of the relevant medical evidence, rather than isolate certain facts while ignoring others to support a finding that a claimant is not disabled. *Id.* at 869. Further, the Fourth Circuit also emphasized that when considering subjective complaints of pain, if an ALJ cites to objective examinations in the medical record to discredit subjective complaints, the ALJ must explain how the results are inconsistent with the subjective claims of pain. *Id.* at 869-70. Relying on *Lewis*, the *Hill* court remanded the plaintiff's case because it was unclear whether the principles enunciated in *Lewis* were clearly defined before the issuance of the R&R.

This Court agrees with the Magistrate Judge that this case is distinguishable from *Hill*. Here, the ALJ gave specific explanation for how the medical evidence of record did not support all of Plaintiff's complaints. For example, the ALJ explained that while Plaintiff alleged to have experienced constant neck and bilateral upper extremity pain, the medical treatment she received was largely conservative, and she was advised to use over the counter bracing, with few, if any recommendations for additional surgeries or more aggressive treatment. Further, the ALJ explained *how* the objective testing appeared to be in conflict with Plaintiff's allegations regarding the severity of her symptoms because she noted that the testing did not show corresponding weakness, she was assessed as having good grip strength (i.e. a 4/5), she had normal MRI examinations, and her EMG testing revealed improved results over time. The ALJ also found significant that her most recent EMG testing showed only mild abnormalities. Finally, the claimant reported symptom improvement with proper medication management. Therefore, unlike in *Hill*, the ALJ here did in fact connect his explanation for discrediting some of Plaintiff's complaints with the medical evidence and did explain the weight given to evidence which Plaintiff

asserts would support greater limitations. Further, the ALJ did not ignore medical testing that might indicate some limitations, but instead indicated when those tests showed mild abnormalities. Indeed, the ALJ here decided to incorporate additional limitations within the RFC despite finding some inconsistencies between the record and Plaintiff's subjective symptoms.

In assessing Plaintiff's statements regarding her symptoms, under its scope of review, the Court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). This Court is not tasked with the position of re-weighing evidence to make a new credibility determination. *See Hancock v. Astrue*, 667 F.3d 470, 471 (4th Cir. 2012) ("[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determination, or substitute our judgment for that of the [ALJ]") (citing *Johnson*, 434 F.3d at 653). This Court is satisfied that the ALJ properly considered Plaintiff's subjective complaints of pain. Accordingly, this Court finds that the analysis of Plaintiff's subjective complaints is supported by substantial evidence and were reached through application of the correct legal standard. This objection is overruled.

## **Conclusion**

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court **ADOPTS** the Magistrate Judge's recommendation to affirm the Commissioner's decision. [ECF #14]. The Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
February 4, 2019  R. Bryan Harwell
United States District Judge